UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEJANDRO VALLADARES, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 22 C 1429 |
| v. | ) ) Judge Sara L. Ellis |
| PRUCO LIFE INSURANCE COMPANY, d/b/a PRUDENTIAL, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Plaintiff Alejandro Valladares brings this lawsuit against Defendant Pruco Life Insurance Company ("Pruco") alleging breach of contract and bad faith in violation of 215 ILCS § 5/155 because Pruco has not paid the death benefit to Valladares under his wife's life insurance policy. Pruco now moves to dismiss Valladares' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because an exclusion to the life insurance policy applies, the Court grants Pruco's motion to dismiss.

**BACKGROUND**[1]

Pruco issues life insurance under the name Prudential. In February 2019, Pruco issued life insurance policy L9 766 569 (the "Policy") to Carelia Tapia, which provided a death benefit of $500,000 to be paid to Alejandro Valladares, Tapia's husband, in the event of Tapia's death. The Policy, however, excludes coverage "[i]f the Insured, whether sane or insane, dies by suicide

---

[1] The Court takes the facts in the background section from the Complaint and presumes them to be true for the purpose of resolving Pruco's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

within two years from the issue date" (the "Suicide Exclusion"). Doc. 1-1 at 26. The Suicide Exclusion explains that if Tapia dies by suicide, the "contract will end without any death benefit paid and [Pruco] will return the premiums [Tapia had] paid." *Id.*

The Policy includes three relevant dates: the issue date, the contract date, and the effective date. The two-year Suicide Exclusion period runs from the issue date, which the Policy defines as "[t]he contract date shown on the first page." *Id.* at 25. The contract date on the first page is February 8, 2019. As shown below, however, there is an asterisk indicating that the contract date changed pursuant to an endorsement (the "Endorsement").



Doc. 1-1 at 18.

The Endorsement replaces the issue date with the "effective date," which it defines as "the date the initial premium was paid and the policy was delivered." *Id.* at 20. The Endorsement goes on to clarify that "all dates shown throughout the contract that depend on the contract date are changed accordingly in the Suicide Exclusion and in the Incontestability provisions, the effective date replaces the issue date." *Id.* The Endorsement contains a space for Pruco to specifically identify the effective date. As shown below, this space was left blank.



*Id.* at 20.

On February 28, 2019, Valladares paid the initial premium, and on March 1, 2019, Valladares acknowledged delivery of the policy by signing a form titled "Acknowledgment of Life Insurance Policy Delivery." Like the Endorsement, this form explained how to determine the effective date and that "[i]n the Suicide exclusion . . . the effective date replaces the issue date." *Id.* at 69.

Unfortunately, on February 15, 2021, Tapia died from a self-inflicted gunshot wound to the head. Pruco determined that Tapia died as a result of suicide during the Suicide Exclusion period and thus only returned to Valladares the premiums that Tapia had paid.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago,* 810 F3d. 476, 480-81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

3

## ANALYSIS

### I. Breach of Contract Claim

Under Illinois law, which the parties agree governs the Policy, the construction of an insurance policy is a question of law. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311 (2006). The Court construes an insurance policy as a whole, giving effect to the true intentions of the contracting parties as expressed in the policy. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002). The Court gives unambiguous language its "plain, ordinary, and popular meaning." *Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153 (2004). An ambiguity exists where policy language is subject to more than one reasonable interpretation. *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). The Court will not find ambiguity simply because the parties disagree as to the meaning of a policy provision, however. *Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). Where ambiguity exists, courts construe the ambiguous terms strictly against the drafter and in favor of coverage. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 119 (1992).

Here, Pruco argues that the Court should dismiss Valladares' breach of contract claim because the Suicide Exclusion applies. Valladares responds that the Policy is ambiguous because Pruco did not fill out blanks on the Endorsement identifying the month, day, and year of the "effective date;" thus, the relevant date for determining the start of the Suicide Exclusion period is subject to multiple, reasonable interpretations, and the Court must resolve any ambiguity his favor. Valladares asks the Court to ignore the Endorsement because of the ambiguity and to find that the relevant date for the Suicide Exclusion is February 8, 2019, which is the "contract date" listed on the first page of the Policy.

Pruco contends that the language of the policy is unambiguous and that the effective date is March 1, 2019, meaning that the Suicide Exclusion period lasted until March 1, 2021. Tapia died on February 15, 2021, which it contends was during the Suicide Exclusion period. Thus, Pruco argues that its only obligation was to return the premium payments Tapia had made, which it did.

The parties' dispute centers around when the two-year Suicide Exclusion period began to run. The Court need look no further than the Policy to answer this question. *See Ace Am. Ins. Co. v. RC2 Corp., Inc.*, 600 F.3d 763, 767 (7th Cir. 2010) ("We begin by examining the language of the insurance policies itself . . . if there is no ambiguity there is no need to look elsewhere."). Beginning with the Suicide Exclusion itself, the Court takes four easy-to-follow steps to reach the answer: the effective date (March 1, 2019) starts the Suicide Exclusion period.

First, the Suicide Exclusion states that "[i]f the insured, whether sane or insane, dies by suicide within two years from the issue date, this contract will end without any death benefit paid." Doc. 1-1 at 26. Second, the "Definitions" section of the Policy defines "issue date" as "[t]he contract date shown on the first page [of the Policy]." *Id.* at 25. Third, the first page of the Policy lists the contract date as February 8, 2019. Next to this date, however, is an asterisk indicating that a subsequent endorsement modified this date. Fourth, and finally, the Endorsement provides that the "effective date" is "the date the initial premium was paid and the policy was delivered." *Id.* at 20. It goes on to specifically state that "all dates shown throughout the policy which depend on the contract date are changed accordingly," and that "[i]n the Suicide Exclusion . . . the effective date replaces the issue date." *Id.*

That the Policy requires a reader to consult multiple pages to reach an otherwise clear answer does not render the Policy ambiguous. Consistent with the Endorsement, the Court finds

5

that the Suicide Exclusion period began running from "the date the initial premium was paid and the policy was delivered," which in this case was March 1, 2019. Because Tapia died as a result of suicide within the applicable period, the Court finds that the Suicide Exclusion applies and that Valladares is not entitled to the death benefit.

That Pruco failed to fill in the blanks identifying the month, day, and year of the effective date does not change this. Within the same sentence that contains the blanks, the Endorsement explains that the effective date is set as "the date the initial premium was paid and the policy was delivered." *Id.* at 20. As such, the only reasonable interpretation is that the effective date was March 1, 2019, the date the premium was paid and the Policy delivered.

The Suicide Exclusion applied from March 1, 2019, until March 1, 2021. Unfortunately, Tapia died as a result of suicide on February 15, 2021. Because Tapia died as a result of suicide during the Suicide Exclusion period, Pruco had only the obligation to return the premiums Tapia had paid, which it did. As such, the Court dismisses Valladares' breach of contract claim.

**II.     Bad Faith Claim**

Having found that Valladares' breach of contract claim fails, the Court concludes that Valladares' bad faith claim fails as well. Under Illinois law, Section 155 "provides an extracontractual remedy to policyholder whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 519 (1996); 215 Ill. Comp. Stat. § 5/155. A claim under Section 155 can only proceed, however, if the insurer owes the insured benefits under the policy terms. *First Ins. Funding Corp.*, 284 F.3d at 807. When an insurer correctly excludes coverage, the insurer has not acted vexatiously or unreasonably. *See Liberty Mut. Ins. Co. v. American Home Assur. Co., Inc.*, 368 Ill. App. 3d 948, 962 (2006) (finding insurer's conduct was not vexatious or unreasonable where

insurer denied coverage based on an applicable exclusion). Accordingly, because Valladares has not sufficiently alleged a claim for breach of contract, he also cannot proceed on his claim for bad faith.

## CONCLUSION

For the foregoing reasons, the Court grants Pruco's motion to dismiss [11]. The Court dismisses the complaint with prejudice and terminates the case.

Dated: September 13, 2022

SARA L. ELLIS
United States District Judge